UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| JOSEPH G., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> COMMISSIONER OF SOCIAL SECURITY, § <br> § <br> Defendant. § | Case # 1:21-cv-00046-DB <br><br> MEMORANDUM DECISION <br> AND ORDER |

## INTRODUCTION

Plaintiff Joseph G. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for child insurance benefits ("CIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 25).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 14, 20. Plaintiff also filed a reply brief. *See* ECF No. 21.

For the reasons set forth below, Plaintiff's motion (ECF No. 14) is **GRANTED**, the Commissioner's motion (ECF No. 20) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth below.

## BACKGROUND

Plaintiff protectively filed applications for CIB and SSI on November 6, 2018, alleging disability beginning October 7, 2014, (the disability onset date), due to autism spectrum disorder and anxiety disorder. Transcript ("Tr.") 230-35, 236-42, 251. The claims were denied initially on

May 1, 2019, and again upon reconsideration on June 19, 2019, after which Plaintiff requested an administrative hearing. Tr. 15. On January 22, 2020, Administrative Law Judge Laura Michalec Olszewski ("the ALJ") conducted a video hearing from White Plains, New York. *Id*. Plaintiff appeared and testified in Niagara Falls, New York, and was represented by Sarah A Frederick, an attorney. *Id*. Diane Durr, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*. Plaintiff's father, Joseph Guido, testified as a witness. Tr. 30-63.

The ALJ issued an unfavorable decision on March 23, 2020, finding that Plaintiff was not disabled. Tr. 15-25. On November 9, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's March 23, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II. The Sequential Evaluation Process

The regulations provide for the payment of disabled child's insurance benefits if the claimant was 18 years old or older and has a disability that began before attaining age 22. *See* 20 CFR 404.350(a)(5). An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she

cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her March 23, 2020 decision:

1. Born on October 7, 1996, the claimant had not attained age 22 as of October 7, 2014, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. The claimant has not engaged in substantial gainful activity since October 7, 2014, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: autism spectrum disorder (Asperger syndrome) and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant should work in a low stress environment, defined as one with occasional judgment, occasional decision-making, and occasional changes in work setting. He should be limited to simple, routine and repetitive tasks. He should have only occasional interaction with supervisors, co-workers, and the public.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 7, 1996 and was 18 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 7, 2014, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

Tr. 15-25.

Accordingly, the ALJ determined that, based on the application for child's insurance benefits protectively filed on November 6, 2018, the claimant is not disabled under section 223(d) of the Social Security Act. Tr. 25. The ALJ also determined that based on the application for supplemental security benefits protectively filed on November 6, 2018, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## **ANALYSIS**

Plaintiff asserts four points of error. First, Plaintiff argues that the ALJ erred by failing to follow Social Security Ruling ("SSR") 11-2p because she ignored a majority of Plaintiff's school records, including relevant psychosocial tests and records of accommodations and interventions Plaintiff received. *See* ECF No. 15-1 at 19-24.

Second, Plaintiff argues that the ALJ erred by failing to properly evaluate the opinion evidence of record in accordance with 20 C.F.R. § 416.920c. *See id*. at 24-27. Specifically, Plaintiff argues that the ALJ failed to properly evaluate the opinions of school psychologist Elizabeth Botzer, Ph.D. ("Dr. Botzer"), clinical neuropsychologist Jessica Englert, Ph.D. ("Dr. Englert"), and treating pediatrician Mary Beth Lopat-Winter, M.D. ("Dr. Lopat-Winter"). *See id*. With respect to Dr. Botzer, Plaintiff complains that the ALJ's failure to mention Dr. Botzer's 2013

opinion recommending that Plaintiff continue to receive accommodations and services after graduation is an error that warrants remand. *See id*. at 25.

Third, Plaintiff argues that the ALJ erred at step three by failing to consider Plaintiff's claim under Listing 12.10 for autism spectrum disorder ("ASD"). *See id*. at 27-29. Plaintiff contends that although the ALJ found ASD was a severe impairment, she conducted her assessment of the Paragraph B criteria under Listings 12.06 and 12.11, rather than Listing 12.10, the correct listing for ASD. *See id*.

Finally, Plaintiff argues that the ALJ's specific RFC findings were not based on substantial evidence in the record. *See id*. at 29-31. Plaintiff alleges that the ALJ's finding that Plaintiff would be limited to "a low-stress environment" with "occasional judgment, occasional decision making, and occasional changes in work setting" (Tr. 20) was not supported by substantial evidence, and furthermore, the ALJ failed to make specific findings about the nature of Plaintiff's stress. *See id*. at 29-31.

In response to Plaintiff's first two points, the Commissioner argues that the ALJ properly evaluated Plaintiff's educational records and the opinion evidence, including the opinions of Dr. Englert, and Dr. Lopat-Winter. *See* ECF No. 20-1 at 13-30. The Commissioner also argues that the ALJ was not required to consider Dr. Botzer's opinion, because her evaluation took place in October-November 2013, nearly one year prior to Plaintiff's October 2014 alleged onset date. *See id*. at 28.

With respect to Plaintiff's argument that the ALJ erred by failing to properly consider Plaintiff's claim under Listing 12.10 for autism spectrum disorder, the Commissioner argues that this appears to be a typographical error, which was, at most, harmless, because Listings 12.10 and 12.11 both required Plaintiff to satisfy the exact same "B criteria" for his ASD to be found *per se*

6

disabling. *See id*. at 9-13. The Commissioner further argues that Plaintiff failed to show that he met the criteria of either Listing 12.10 or 12.11, as was his burden at this step of the sequential evaluation. *See id*. at 13.

As for Plaintiff's final point, the Commissioner argues that the ALJ's specific "low stress" requirement in the RFC was supported by substantial evidence, including the prior administrative medical findings of state agency psychological consultant E. Gagan ("Dr. Gagan"), and state agency psychological consultant S. Juriga ("Dr. Juriga"), both of which the ALJ found persuasive because they were consistent with the medical evidence in the record and supported by Plaintiff's own testimony and activities of daily living. *See id*. at 20-22.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record and the ALJ's decision, the Court finds that the ALJ failed to fully consider Plaintiff's educational records, including the report of school psychologist Dr. Botzer, whose opinion was not mentioned at all. Dr. Botzer administered psychological and educational testing on November 1 and November 15, 2013, when Plaintiff was 17 years old and in the 11th grade. Tr. 326-28, 332-33. Testing included the Wechsler Adult Intelligence Scale Fourth Edition ("WAIS-IV") to measure cognitive functioning (Tr. 326) and the Vineland Adaptive Behavior Scale ("VABS-II") which was completed by Plaintiff's mother and his high

school special education teacher to assess his adaptive functioning within and outside of the classroom (Tr. 327).

On the WAIS-IV, Plaintiff's Full Scale IQ score was measured at 85, with a Processing Speed score of 74; Verbal Comprehension, 91; Perceptual Reasoning, 94; and Working Memory score of 92. Tr. 326. While most of Plaintiff's scores fell within the average to low average range, his processing speed was in the borderline range, suggesting his ability to complete tasks under time constraints was very weak, compared to his other skills. In the classroom setting he could struggle to complete tasks in a timely manner without prompting and support from those around him, due to distractibility and tendency to focus on irrelevant information or data. Tr. 326. Academic achievement testing fell mostly in the average to below average range, with reading and writing skills flagged as areas of weakness. Tr. 327, 328.

Plaintiff's scores on the VABS-II fell primarily in the low range, with socialization being his weakest area. Tr. 327. He rarely sought out peer interactions or initiated conversations with others, and his lack of peer interactions or relationships outside of school was well below what would be expected of a student of his age. Tr. 328. In school, Plaintiff's teachers reported he was pleasant but rarely interacted casually with others and did not seem to grasp hints or indirect cues in conversation. *Id*. Many of his behaviors were typical of students diagnosed with autism spectrum disorder, and his maladaptive behavioral index was moderately high with difficulties internalizing and externalizing problems; his mother reported that Plaintiff avoided social interaction, had temper tantrums, was stubborn or sullen, said embarrassing things or asked embarrassing questions in public, and ignored others. *Id*. Overall, Plaintiff's adaptive skills fell within the low range, and he required adult support to understand and navigate social demands in his environment. Id.

*Dr*. Botzer interpreted Plaintiff's scores on the VABS-II to suggest that he would require considerable support as he transitioned into the adult world, to navigate social demands and recommended that Plaintiff's parents be provided with information about post-graduation support services such as ACCESS-VR VR (Adult Career and Continuing Education Services-Vocational Rehabilitation) and OPWDD (Office for People with Developmental Disabilities). *Id*. Dr. Botzer noted that Plaintiff's greatest area of difficulty was socialization skills and lack of awareness regarding how his behavior affected others. Tr. 332. She also noted "personal hygiene related concerns" such as "his tendency to pick his nose, scratch himself, and touch his private area regularly." *Id*.  He needed frequent reminders about behaviors that were inappropriate in the classroom. Tr. 332.During the testing Plaintiff required reminders to keep his hands out of his shirt and out of/away from his nose. Tr. 333.

The record also contains a Post-Secondary Student Exit Summary Report dated April 23, 2015 (the "Exit Report"), shortly before Plaintiff's scheduled graduation date of June 2015. Tr. 324. The report indicated that Plaintiff had needed a significant level of assistance to complete his schoolwork. Tr. 324. Although his academic evaluations had shown low average to average skill levels, he struggled with reading and writing and was very insecure about his abilities; he constantly requested help with his work, struggled to answer questions requiring inference; and could only respond to basic fact-based questions without assistance. *Id*. He was very distracted in class and often appeared tired and lethargic; he rarely seemed to be listening during class and usually was unable to recount class discussions; he struggled to process what he heard and often requested clarification from a teacher before beginning an assignment. *Id*. He needed some reminders to tune in to social cues and had received speech-language services, including help with having conversations. *Id*.

The Social Security Administration has promulgated specific guidance with respect to the evaluation of disability in young adults, who it defines as "people between the ages of 18 to approximately 25." SSR 11-2p, 2011 WL 4055665, at *1 (Sept. 12, 2011). Born on October 7, 1996, Plaintiff was 21 years old when he filed his DIB and SSI applications (Tr. 230), and thus, qualifies as a young adult. The same definition of disability, rules, and five-step sequential evaluation process apply to young adults as to older adults. SSR 11-2p, *supra*, 2011 WL 4055665 at *2; *Coppola v. Berryhill*, 2019 WL 1292848, at *20 (S.D.N.Y. Mar. 21, 2019) (collecting cases).

SSR 11-2p "instructs that ALJs consider evidence from other sources who are not medical sources, but who know and have contact with the young adult, such as family members or educational personnel [,] to assist in evaluating the severity and impact of a young adult's impairment(s)." *Samuel v. Comm'r of Soc. Sec.*, 2015 WL 5774850, at *13 (E.D.N.Y. Sept. 30, 2015) (internal quotation marks omitted); *Hindsman v. Berryhill*, 2018 WL 4568598, at *11 (E.D. Pa. Sept. 24, 2018) (when acceptable medical source establishes existence of medically determinable impairment, ALJ will consider all evidence relevant to disability determination, including school records).

SSR 11-2p also addresses the task of extrapolating a young adult's work-related limitations from his performance in school. The SSR acknowledges that:

> The young adult's ability to function in settings that are less demanding, more structured, or more supportive than those in which people typically work does not necessarily show how the young adult will be able to function in a work setting.... The more extra help or support of any kind that a young adult receives because of his or her impairment(s), the less independent he or she is in functioning, and the more severe we will find the limitation to be.

SSR 11-2p, 2011 WL 4055665, at *7-*8. SSR 11-2p also recognizes that "evidence about a young adult's functioning from school programs, including IEPs . . . may indicate how well a young adult can use his or her physical or mental abilities to perform work activities." *Id*. at *7. SSR 11-2p

10

identifies certain "examples of school-reported difficulties [that] might indicate difficulty with work activities," including:

> [d]ifficulty in understanding, remembering, and carrying out simple instructions and work procedures during a school-sponsored work experience; [d]ifficulty communicating spontaneously and appropriately in the classroom; [d]ifficulty with maintaining attention for extended periods in a classroom; [d]ifficulty relating to authority figures and responding appropriately to correction or criticism during school or a work-study experience; [and] [d]ifficulty using motor skills to move from one classroom to another.

*Id*.

SSR 11-2p, requiring examination and discussion of a claimant's school records, is binding on the ALJ in this case. *Heckler v. Edwards*, 465 U.S. 870, 873 n. 3 (1984) (Social Security Rulings are binding on all SSA decision-makers); *Samuel*, 2015 WL 5774850, at *13 ((remanding where ALJ failed to review school records, including school psychologist records, in conflict with SSR 11-2p).

The Commissioner argues (without support) that the ALJ was entitled to disregard Dr. Botzer's opinion because it was dated several months before Plaintiff's alleged onset date. *See* ECF No. 20 at 27. However, this is contrary to the Commissioner's guidance in SSR 11-2p. *See Ka'deef M. v. Comm'r of Soc. Sec.*, No. 3:20-CV-787 (DJS), 2021 WL 2952801, at *5–6 (N.D.N.Y. July 14, 2021) (remanding because the ALJ cursorily rejected the plaintiff's school records which similarly predated his 18th birthday). As the court explained in *Ka'Deef M.*, "[g]iven Plaintiff's limited mental health treatment outside the educational context and the lack of any significant work experience from which to draw comparisons, school records may provide the most comprehensive insight into his level of functioning in the period preceding his SSI application." *Ka'deef M.*, 2021 WL 2952801, at *6. Thus, pursuant to SSR 11-2p, the ALJ had a duty to evaluate Plaintiff's school records, including Dr. Botzer's testing and opinion.

11

Furthermore, Plaintiff's alleged onset date is his 18th birthday because that is when he attained adulthood under Social Security's regulations, not because his limitations from autism began on that date. *See* Tr. 67. In fact, treating pediatrician Dr. Lopat-Winter noted that Plaintiff had been diagnosed with ASD before the age of four. Tr. 443. Moreover, the ALJ relied on other pre-onset evidence to deny Plaintiff's claim, such as her references to his good grades in school, his ability to achieve a Regents diploma, and some noted areas of academic improvement. Tr. 21, 22. However, the ALJ's analysis was incomplete because it failed to account for the accommodations Plaintiff received to achieve his good grades or Plaintiff's need for frequent prompting, concrete step-by-step explanations of directions, and redirection when he exhibited inappropriate behavior in school due to inability to grasp social norms/taboos, as noted above. Tr. 324-24, 328. The ALJ's consideration of only Plaintiff's academic achievements without the accommodations he received to attain them is grounds for remand.

Notably, Dr. Botzer's recommendation that Plaintiff continue to receive accommodations and services after graduation was consistent with other evidence the ALJ failed to consider, including the Exit Report discussed above (Tr. 324-25), Dr. Englert's opinion recommending vocational support services (Tr. 365), and ACCES-VR's assessment of Plaintiff's vocational needs (Tr. 305). While the ALJ evaluated part of Dr. Englert's opinion, she ignored her recommendation that Plaintiff receive vocational training for supported employment. Tr. 23, 365. ACCES-VR personnel determined Plaintiff would have difficulty with job interviews and following multiple directions, accepting new tasks or working within a group; he required assistance making decisions about basic life necessities; he needed frequent and direct encouragement to act; and he needed ongoing personal assistance to start and finish tasks, do all steps in a task, follow schedules, and decide next steps. Tr. 305. They also found that Plaintiff would not be able to sustain consistent

12

work effort over the course of a 5-day workweek or 8-hour workday. *Id*. Because the VE testified that there would not be work for an individual with restrictions consistent with sheltered work (Tr. 61-62), these omissions cannot be considered harmless. Accordingly, further administrative proceedings are necessary for proper consideration of Plaintiff's educational records pursuant to SSA 11-2p.

Because the Court has already determined, for the reasons discussed above, that remand of this matter for further administrative proceedings is necessary, the Court declines to address Plaintiff's additional arguments. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted*); Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, *261 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 20) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE